914 So.2d 925 (2005)
SUNSET HARBOUR CONDOMINIUM ASSOCIATION, et al., Appellants,
v.
Joel ROBBINS, etc., Appellee.
No. SC03-520.
Supreme Court of Florida.
July 7, 2005.
As Revised on Denial of Rehearing November 3, 2005.
*926 Arnaldo Velez, Coral Gables and Mitchell A. Feldman, Miami, and Charles J. Crist, Jr., Attorney General, Eric J. Taylor, Senior Assistant Attorney General, Louis Hubener, and Mark T. Aliff, Assistant Attorneys General, Tallahassee, FL, for Appellants.
Robert A. Ginsburg, Miami-Dade County Attorney, Thomas W. Logue, Jay W. Williams, and James K. Kracht, Assistant County Attorneys, Miami, FL, for Appellees.
David L. Powell and Dan R. Stengle of Hopping, Green and Sams, P.A., Tallahassee, FL, and Robert M. Rhodes, Executive Vice President, Jacksonville, FL, on behalf of the St. Joe Company as Amicus Curiae.
Victoria L. Weber of Hopping, Green and Sams, P.A., Tallahassee, FL, and Kenneth M. Rubin, Senior Attorney, Juno Beach, FL, on behalf of Florida Power and Light Company as Amicus Curiae.
Joseph C. Mellichamp of Carlton Fields, P.A., Tallahassee, FL, on behalf of Florida Home Builders Association as Amicus Curiae.
Benjamin K. Phipps of The Phipps Firm, Tallahassee, FL, on behalf of Florida Association of Homes for the Aging and National Association of Real Estate Investment Trusts as Amici Curiae.
Larry E. Levy and Loren E. Levy of the Levy Firm, Tallahassee, FL, on behalf of Property Appraisers' Association of Florida, Inc. as Amicus Curiae.
Paul F. King, Assistant County Attorney of Palm Beach County, West Palm Beach, FL, on behalf of Palm Beach County as Amicus Curiae.
Heather J. Encinosa of Nabors, Giblin and Nickerson, P.A., Tallahassee, FL, on behalf of Florida Association of Counties, Florida Association of County Attorneys and Florida League of Cities, as Amici Curiae.
Gaylord A. Wood, Jr., of Wood and Stuart, P.A., New Smyrna Beach, FL, on behalf of William Markham, as Broward County Property Appraiser; Francis Akins, as Levy County Property Appraiser; Kristina Kulpa, as Henry County Property Appraiser; Alvin Mazourek, as Hernando County Property Appraiser; Laurel Kelly, as Martin County Property Appraiser; Morgan Gilreath, as Volusia County Property Appraiser; and H.W. *927 "Bill" Suber, as Seminole County Property Appraiser, as Amici Curiae.
PER CURIAM.
We have on appeal a decision of the Third District Court of Appeal declaring section 192.042, Florida Statutes (1997), unconstitutional.[1] Section 192.042 requires property appraisers to assess all real property according to its just value as of January 1 of each year. However, if improvements to a parcel of property are not substantially completed on January 1, no valuation is to be placed on those improvements for that year. We hold that: (1) Sunset Harbour Condominium Association waived any objection to the property appraiser's affirmative defense that section 192.042 is unconstitutional; and (2) section 192.042 reasonably implements the provisions of article VII, section 4 of the Florida Constitution (which directs the Legislature to prescribe regulations that will secure a just valuation of property) and, therefore, is constitutional. We reverse the district court's decision and remand the case for proceedings consistent with this opinion.

STATEMENT OF THE CASE AND FACTS
Sunset Harbour Condominium, located in Miami, was in the final stages of construction as of January 1, 1997. The Miami-Dade County Property Appraiser, Joel Robbins, determined that the structure was substantially complete as of January 1, 1997, and assessed the property a value of $22,935,100. The Sunset Harbour Condominium Association filed suit and argued that under section 192.042(1), Florida Statutes (1997), the improvements to the property should have been assessed no value because the condominium was not "substantially complete" on January 1, 1997.[2] Robbins raised as an affirmative defense that the statute violated article VII, section 4 of the Florida Constitution, and moved for summary judgment on this ground. The trial court held that the statute was unconstitutional and granted summary judgment in Robbins' favor. The Third District affirmed the trial court, Sunset Harbour N. Condo. Ass'n v. Robbins, 837 So.2d 1181 (Fla. 3d DCA 2003), for the reasons stated in its earlier decision in Fuchs v. Robbins, 738 So.2d 338 (Fla. 3d DCA 1998).[3]Fuchs was reversed by this Court after the Court held that the property appraiser did not have standing to challenge the statute in question. See Fuchs v. Robbins, 818 So.2d 460 (Fla.2002). Standing was not raised by the parties in this case in either the trial court or the Third District Court of Appeal. However, it was raised by Sunset Harbour in its initial brief to this Court and was addressed by several amici curiae.
The Florida Department of Revenue was named by Sunset Harbour as a party defendant in the original action, as required by statute. The department joined *928 Sunset Harbour as an appellant after the circuit court held section 192.042 to be unconstitutional.
We begin our analysis by determining whether Sunset Harbour preserved its objection to Robbins' standing to raise the affirmative defense. We also address the constitutionality of section 192.042.

I. FAILURE TO RAISE AN OBJECTION TO THE AFFIRMATIVE DEFENSE
Sunset Harbour and amici curiae argue that Robbins lacked standing to raise the constitutionality of section 192.042 as an affirmative defense. As support for his argument that the affirmative defense was properly asserted, Robbins relies on obiter dictum from Fuchs. This dictum states that a property appraiser may raise a defensive challenge to the constitutionality of a statute.
We hold that Sunset Harbour waived any objection to the validity of the asserted affirmative defense because no objection was raised in either the trial court or the district court. As a general rule, it is not appropriate for a party to raise an issue for the first time on appeal. Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999) (a claim not raised in the trial court will not be considered on appeal); Dober v. Worrell, 401 So.2d 1322 (Fla.1981) (appellate court will not consider issues not presented to the trial judge on appeal from final judgment on the merits). "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." Tillman v. State, 471 So.2d 32, 35 (Fla.1985). Because an objection to the availability of this affirmative defense to the property appraiser was not made at the trial court or the district court, we hold that any objection to the defense was waived.

II. THE CONSTITUTIONALITY OF SECTION 192.042, FLORIDA STATUTES
Having held that Sunset Harbour waived any objection to the affirmative defense asserted by Robbins, we now address the constitutionality of section 192.042. Robbins argues that section 192.042(1) is unconstitutional because article VII, section 4 of the Florida Constitution requires all property and structures to be assessed at fair market value, regardless of whether the structures are substantially completed. He argues that section 192.042(1) creates an unconstitutional fifth exception to the just valuation requirement in article VII, section 4. In Culbertson v. Seacoast Towers East, Inc., 212 So.2d 646 (Fla.1968), we rejected the claim that the predecessor substantially complete statute constituted an exception to the "just valuation"[4] requirement. We recognized that the statute did not create an exception to the constitutional requirement that property be assessed at its fair market value but, instead, determined the time at which property improvements should be assessed (i.e., when they are substantially complete). Id. The same reasoning applies to this case.
We begin our analysis by restating the appropriate standard of review. We then address the state of the substantial completion statute after Culbertson. Finally, we discuss the legislative method for achieving a just valuation.

*929 A. STANDARD OF REVIEW
This Court's review of the district court's decision is de novo. See Florida Fish & Wildlife Conservation Comm'n v. Caribbean Conservation Corp., Inc., 789 So.2d 1053, 1054 (Fla. 1st DCA 2001) (holding that whether a state statute is constitutional is a pure question of law subject to de novo review), approved, 838 So.2d 492 (Fla.2003).
Statutes come before this Court "clothed with a presumption of constitutionality." Dep't of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 881 (Fla.1983). Therefore, it is a fundamental rule of statutory construction that, if at all possible, a statute should be construed to be constitutional. See Van Bibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880, 883 (Fla.1983). In fact, this Court is bound "to resolve all doubts as to the validity of [the] statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." State v. Stalder, 630 So.2d 1072, 1076 (Fla.1994) (quoting State v. Elder, 382 So.2d 687, 690 (Fla.1980)). In interpreting constitutional provisions, "[t]he fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it." Gray v. Bryant, 125 So.2d 846, 852 (Fla.1960).

B. THE SUBSTANTIAL COMPLETION STATUTE AFTER CULBERTSON

In 1968 this Court upheld the constitutionality of section 193.11,[5] the predecessor to section 192.042,[6] under the 1885 version of the constitution. See Culbertson v. Seacoast Towers East, Inc., 212 So.2d 646 (Fla.1968). The Court stated:
The statute constitutes only a temporary postponement of valuation and assessment of incomplete improvements on real property provided the prescribed conditions are met on the annual assessment date. The requirement is simply that the separate classification of such property shall bear some reasonable relationship *930 to the legislative power to prescribe regulations to secure a just evaluation of property. Factors analogous to those here involved have in numerous instances been made the basis for special statutory treatment.
Id. at 647. We find no basis to believe the 1968 revisions to the just valuation provision were intended by the drafters or the public to invalidate the substantial completion statute. Although Culbertson was decided prior to the 1968 constitutional amendments, both the 1968 and 1885 constitutions mandate a "just valuation" for all property. See art. IX, § 1, Fla. Const. (1885); art. VII, § 4, Fla. Const. (1968). Article VII, section 4 of the Florida Constitution states:
By general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation, provided:
(a) Agricultural land, land producing high water recharge to Florida's aquifers, or land used exclusively for noncommercial recreational purposes may be classified by general law and assessed solely on the basis of character or use.
(b) Pursuant to general law tangible personal property held for sale as stock in trade and livestock may be valued for taxation at a specified percentage of its value, may be classified for tax purposes, or may be exempted from taxation.
(c) All persons entitled to a homestead exemption under Section 6 of this Article shall have their homestead assessed at just value as of January 1 of the year following the effective date of this amendment. This assessment shall change only as provided herein.
. . . .
(d) The legislature may, by general law, for assessment purposes and subject to the provisions of this subsection, allow counties and municipalities to authorize by ordinance that historic property may be assessed solely on the basis of character or use. Such character or use assessment shall apply only to the jurisdiction adopting the ordinance. The requirements for eligible properties must be specified by general law.
(e) A county may, in the manner prescribed by general law, provide for a reduction in the assessed value of homestead property to the extent of any increase in the assessed value of that property which results from the construction or reconstruction of the property for the purpose of providing living quarters for one or more natural or adoptive grandparents or parents of the owner of the property or of the owner's spouse if at least one of the grandparents or parents for whom the living quarters are provided is 62 years of age or older. Such a reduction may not exceed the lesser of the following:
Article VII, section 4 of the 1968 Constitution replaced article IX, section 1 of the 1885 Constitution, which stated:
The Legislature shall provide for a uniform and equal rate of taxation ... and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes.
The phrase "just valuation" has been construed by this Court to mean "fair market value." See Mazourek v. Wal-Mart Stores, Inc., 831 So.2d 85, 88 (Fla.2002) (citing Valencia Center, Inc. v. Bystrom, 543 So.2d 214, 216 (Fla.1989)); see also Walter v. Schuler, 176 So.2d 81, 85-86 (Fla.1965) ("fair market value" legally synonymous with "just valuation").
*931 Robbins relies on Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973), to support his argument that the 1968 constitutional amendments, enumerating specific instances where property may be valued according to different valuation standards, affect the holding in Culbertson. This argument is without merit. In Interlachen, this Court held that section 195.062(1), Florida Statutes (1971), violated article VII, section 4 of the 1968 Florida Constitution. Section 195.062(1) provided that "platted lands unsold as lots shall be valued for tax assessment purposes on the same basis as any unplatted acreage of similar character until 60 percent of such lands included in one plat shall have been sold as individual lots." Interlachen, 304 So.2d at 434. The Court stated, "It is true that the constitutional provision allows the Legislature to prescribe regulations for the purpose of securing a just valuation of all property, but such regulations must apply to all property and not to any one particular class." Id. The Court held that the statute created a classification based on ownership, effectively giving a subdivision developer a "tax break by treating his unsold lots as unplatted for tax valuation purposes." Id. at 435. The Court pointed out in Interlachen that the statute taxed similar property differently, depending on who owned it. If the lot had been sold, the land was taxed; if it had not been sold, the land was not taxed. The Court also noted its concern that assessment standards and criteria might be manipulated to favor certain taxpayers over others. Unlike section 192.042(1), the statute at issue in Interlachen did not permit a "just valuation" of all property. For this reason, Interlachen is distinguishable from Culbertson and the case currently before us. The Fourth and Fifth District Courts of Appeal have recognized this fact. Indeed, they have relied on Culbertson to uphold the constitutionality of the same statute at issue in this case. In 1983, the Fourth District Court of Appeal held that section 192.042 did not violate article VII, section 4 of the 1968 constitution. See Markham v. Yankee Clipper Hotel, Inc., 427 So.2d 383 (Fla. 4th DCA 1983). The Fifth District followed suit in its 1988 decision in Hausman v. Bayrock Inv. Co., 530 So.2d 938 (Fla. 5th DCA 1988). The court stated: "We think the validity of the statute is settled by [Culbertson] and [Markham]." Id. at 939 (citations omitted). We agree.

C. THE METHOD FOR ACHIEVING A JUST VALUATION
While the Florida Constitution requires that "[b]y general law regulations shall be prescribed which shall secure a just valuation of all property," art. VII, § 4, Fla. Const., the framers of the constitution delegated to the Legislature the responsibility for deciding the specifics of how that "just valuation" would be secured. See Collier County v. State, 733 So.2d 1012, 1019 (Fla.1999) (the constitution requires the Legislature to enact the general law regarding the collection of ad valorem taxes, and the Legislature has established a specific statutory scheme for the timing of the valuation and assessment). One of these determinations, of course, was when the various types of property would be assessed. The Legislature fulfilled its constitutional obligation in section 192.042, which states in part:
All property shall be assessed according to its just value as follows:
(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. "Substantially completed" shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed.
*932 § 192.042, Fla. Stat. (1997). This statute reflects the Legislature's intent to delay valuation of improvements to property until such time as these improvements are substantially completed. In upholding the constitutionality of a predecessor statute to section 192.042(1), this Court noted the timing decision contemplated by the statutory scheme. See Culbertson, 212 So.2d at 647. We believe in this case, as we did in Culbertson, that "[t]he statute constitutes only a temporary postponement of valuation and assessment of incomplete improvements on real property provided the prescribed conditions are met on the annual assessment date." Id.; see also Yankee Clipper, 427 So.2d at 385 ("The legislature's determination that an incomplete structure, unusable for the purposes intended upon its completion, should not be assessed in that condition is a matter of perception."). As this Court stated in Collier County v. State, 733 So.2d 1012 (Fla. 1999):
The constitution requires the Legislature to enact the general law regarding the collection of ad valorem taxes, and the Legislature has established a specific statutory scheme for the timing of the valuation and assessment. Section 192.042(1) makes clear that partial year assessments are not authorized for improvements to real property substantially completed after January 1, which "shall have no value placed thereon." There is no ambiguity in the statute. It appears that any benefit to taxpayers was specifically contemplated by the legislative scheme....
If there is a windfall created by the current statutory scheme, as the County claims, the County's redress lies with the Legislature. While we do not know why the Legislature has declined to act, as observed by the trial court in this case: "We clearly have able and competent legislators who are obligated to do the right thing."
To achieve the relief sought, the counties must persuade the Legislature to provide the cure, not the courts.
Id. at 1019.
The "substantial completion" statute implements the provisions of article VII, section 4 in such a way as to provide predictability in the assessment rolls which serve as the basis for revenue projections in the local government budget-making process. The statute prescribes reasonable guidelines for valuation of incomplete improvements for property tax purposes, which infuse uniformity and certainty into ad valorem taxation. The absence of a "substantial completion" statute would only promote uncertainty and encourage litigation.
In essence, we previously upheld the constitutionality of the substantial completion statute against a constitutional challenge in Culbertson v. Seacoast Towers East, Inc., 212 So.2d 646 (Fla.1968). We do the same here. While the constitution requires a just valuation of all property, the Legislature is given the responsibility for deciding the specifics of how that just valuation is secured. We hold that section 192.042 is a reasonable and, therefore, constitutional implementation of article VII, section 4 of the Florida Constitution.

CONCLUSION
We hold that: (1) Sunset Harbour waived any objection to the property appraiser's affirmative defense that section 192.042 is unconstitutional; and (2) section 192.042 does not violate article VII, section 4 of the Florida Constitution. We hereby reverse the decision of the Third District Court of Appeal and remand for proceedings consistent with this opinion.
It is so ordered.
*933 PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
BELL, J., concurs specially with an opinion, in which PARIENTE, C.J., concurs.
BELL, J., specially concurring.
I fully concur with the majority opinion. I write separately solely to clear up confusion regarding the dictum in Fuchs v. Robbins, 818 So.2d 460 (Fla.2002) (Fuchs III).[7] This review will establish that there is no adequate support in our case law for the defensive posture dictum in Fuchs III and that such a defense is contrary to our holding in State ex rel. Atlantic Coast Line Railway Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922).

A. FUCHS III AND RELATED CASES
In Fuchs III, this Court considered the conflict between Turner v. Hillsborough County Aviation Authority, 739 So.2d 175 (Fla. 2d DCA 1999), and Fuchs v. Robbins, 738 So.2d 338 (Fla. 3d DCA 1998)(Fuchs II)[8] as to whether a property appraiser could offensively assert the unconstitutionality of a statute. In Turner, the property appraiser for Hillsborough County assessed value to a Tampa sports facility, notwithstanding the fact that the facility was exempt from property taxes under section 196.012(6), Florida Statutes (1997). The taxpayer appealed to the Value Adjustment Board, which reduced the property appraiser's assessment. The property appraiser appealed the board's decision to the circuit court and argued that section 196.012 was unconstitutional. The circuit court dismissed the action. Relying upon clear precedent of this Court, the Second District Court of Appeal affirmed the dismissal, holding that the property appraiser did not have standing to challenge the validity of the statute.
In Fuchs, the Dade County Property Appraiser, Joel Robbins, assessed value to a structure that was not substantially complete as of January 1 of that tax year. The taxpayer appealed the assessment to the Dade County Value Adjustment Board. The board reduced the value of the assessment. Robbins brought an action in circuit court to defend his original tax assessment of the building. He argued that section 192.042 was unconstitutional. The trial court adopted the General Master's finding that section 192.042 was unconstitutional. On appeal, a three-judge panel of the Third District Court of Appeal reversed the decision and held that section 192.042 was constitutional. (Fuchs I). On rehearing en banc, the Third District affirmed the decision of the circuit court, holding that section 192.042 was unconstitutional. (Fuchs II). This Court reversed *934 the district court and held that Robbins did not have standing to initiate litigation challenging the constitutionality of a statute affecting his duties. (Fuchs III). However, this Court included dictum in its opinion that a property appraiser may raise a constitutional challenge defensively. Specifically, this Court stated:
Historically, it has been recognized that an appraiser acting in his or her official capacity cannot ordinarily initiate an independent action challenging the validity of a taxing statute which allegedly provides for an ad valorem tax exemption (express or de facto) which is contrary to limitations imposed by the Florida Constitution. See Markham v. Yankee Clipper Hotel, Inc., 427 So.2d 383 (Fla. 4th DCA) (holding that a property appraiser who is dissatisfied with the wisdom of a taxation statute cannot challenge the validity of the statute in an action for declaratory relief), review denied, 434 So.2d 888 (Fla.1983). The appraiser can make such a challenge, however, if the taxing statute at issue involves the disbursement of public funds. See Kaulakis v. Boyd, 138 So.2d 505, 507 (Fla.1962) (recognizing that "the general rule that a ministerial officer cannot in a judicial proceeding attack the validity of a law imposing duties on him is subject to the exception that such a law may be challenged where it involves the disbursement of public funds"); Barr v. Watts, 70 So.2d 347, 351 (Fla.1953) (observing, without finding it applicable, that an exception to the Atlantic Coast Line rule that the "right to declare an act unconstitutional... cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution" becomes applicable "when the public may be affected in a very important particular, its pocket-book," and, in such case, "the necessity of protecting the public funds is of paramount importance, and the rule denying to ministerial officers the right to question the validity of the Act must give way to a matter of more urgent and vital public interest"). The appraiser may also raise such a constitutional defense in an action initiated by the taxpayer challenging a property assessment. See Department of Educ. v. Lewis, 416 So.2d 455, 458 (Fla.1982) (observing that, while state officers "must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise," because, in such case, they do not "have a sufficiently substantial interest or special injury to allow the court to hear the challenge," if "the operation of a statute is brought into issue in litigation brought by another against a [state officer, the officer] may defensively raise the question of the law's constitutionality").
However, as we recognized in Department of Education v. Lewis, 416 So.2d 455, 458 (Fla.1982), "[s]tate officers and agencies must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise." Section 194.036(1)(a) provides no exception to this rule. Indeed, it specifically provides, in pertinent part, that "nothing herein shall authorize the property appraiser to institute any suit to challenge the validity of any portion of the constitution or of any duly enacted legislative act of this state." As aptly observed by the Second District in Turner, "[t]his statutory prohibition of constitutional challenges by property appraisers is in accord with the general common law principle denying ministerial officers the power to challenge the constitutionality of statutes." 739 So.2d *935 at 179-80 (citing State ex rel. Atlantic Coast Line Ry. Co. v. State Bd. of Equalizers, 84 Fla. 592, 94 So. 681 (1922), and Barr v. Watts, 70 So.2d 347, 351 (Fla.1953)). Accordingly, we approve the decision in Turner, and reverse the decision in Fuchs.

Fuchs v. Robbins, 818 So.2d at 463-64 (emphasis added) (footnote omitted). Robbins cites the statement in Fuchs III that "[t]he appraiser may also raise such a constitutional defense in an action initiated by the taxpayer challenging a property assessment," as support for his ability to raise the constitutional challenge as an affirmative defense.
As support for the "defensive posture exception," the Court in Fuchs III cited to Department of Education v. Lewis, 416 So.2d 455, 458 (Fla.1982), which contains the same dictum cited in Fuchs III. The pertinent part of Lewis states:
State officers and agencies must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise. Barr v. Watts, 70 So.2d 347 (Fla.1953); City of Pensacola v. King, 47 So.2d 317 (Fla.1950); State ex rel. Watson v. Kirkman, 158 Fla. 11, 27 So.2d 610 (1946); State ex rel. Atlantic Coast Line R.R. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922). In such a situation, the public officer or agency does not have a sufficiently substantial interest or special injury to allow the court to hear the challenge.
If, on the other hand, the operation of a statute is brought into issue in litigation brought by another against a state agency or officer, the agency or officer may defensively raise the question of the law's constitutionality. City of Pensacola v. King, 47 So.2d 317 (Fla.1950); State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854 (1937); State ex rel. Florida Portland Cement Co. v. Hale, 129 Fla. 588, 176 So. 577 (1937).
Lewis, 416 So.2d at 458. Upon closer inspection, the cases cited in Lewis do not support a defensive posture exception.
This Court first addressed the question of whether a ministerial officer may challenge the constitutionality of a statute in Atlantic Coast Line. In that case, a taxpayer challenged the Comptroller's assessment and valuation of its railroad property and appealed to the State Board of Equalizers. The board refused to accept the appeal. After the taxpayer filed a writ of mandamus, the board argued as a defense that the statute that gave it appellate jurisdiction was unconstitutional. The Court held that the Board's defensive challenge to the statute violated the separation of powers doctrine because it impermissibly asserted "the right of a branch of government other than the judiciary, to declare an act of the Legislature to be unconstitutional." Id. at 682. The Court noted that "[t]he doctrine that the oath of office of a public official requires him to decide for himself whether or not an act is constitutional before obeying it will lead to strange results, and set at naught other binding provisions of the Constitution." Id. at 683. This express holding in Atlantic Coast Line is contrary to the defensive posture dictum in Lewis.
The sole exception to the rule of law set forth in Atlantic Coast Line is known as the "public funds" exception. The "public funds" exception was first adopted by this Court in State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854 (1937). In Cone, a comptroller refused to disburse road funds. A mandamus action was filed against him. As a defense to that action, the comptroller challenged the constitutionality of the law requiring disbursement of the funds. This Court acknowledged *936 the general rule announced in Atlantic Coast Line, but also noted that an appropriate exception to the rule had been made in lower appellate court cases where a ministerial officer is charged with the control and disbursement of public funds. See Cone, 177 So. at 856. The Court embraced the public funds exception and held that the comptroller met the requirements of that exception. See id. at 857.
In State ex rel. Florida Portland Cement Co. v. Hale, 129 Fla. 588, 176 So. 577 (1937), the State Road Department was sued in mandamus to force compliance with a statute requiring inspection of cement imported from outside of Florida. In defense, the department challenged the validity of the inspection law. Though the respondent's standing was not a question presented to the Court by the parties, the Court addressed the question anyway. Citing to Cone, the Court determined that the state road department was required to expend public funds under the act and noted that "[o]ne who is required to pay out public funds should be at least reasonably certain that the same are paid out under valid law." Portland Cement, 176 So. at 585. The Court therefore rejected any suggestion that the road department lacked standing to challenge the statute.
The scope of this public funds exception was tested in City of Pensacola v. King, 47 So.2d 317 (Fla.1950). King involved a challenge by the Railroad and Public Utilities Commission to a statute authorizing the City of Pensacola to regulate taxicabs. This Court noted that the act in question authorized the commission to determine the extent of its adjoining suburban territory. The Court stated: "To determine this and perhaps other questions, it may become necessary for the Commission to have a hearing requiring the expenditure of public funds." King 47 So.2d at 319. On this basis, the Court held that the commission had met the public funds exception. The reasoning in King severely stretched the disbursement of public funds exception to authorize the commission to challenge the act. As noted by the Second District Court of Appeal in Turner, the same argument raised in King was rejected by this Court three years later in Barr v. Watts, 70 So.2d 347 (Fla.1953). As the Turner court correctly stated:
Shortly after King was decided, the supreme court rejected this same argument, distinguished the dictum in King and re-affirmed the rule of State ex rel. Atlantic Coast Line Railway Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922), that the "right to declare an act unconstitutional ... cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution."
Turner, 739 So.2d at 178 (quoting Barr v. Watts, 70 So.2d 347, 350-51 (Fla.1953)).
In Barr, the petitioner filed a proceeding in mandamus to compel the State Board of Law Examiners to allow her to take the bar exam, pursuant to an applicable statute. In its answer, the board asserted that the statute cited by Barr was "invalid as special and discriminatory legislation." Barr, 70 So.2d at 348. The Court held that the board did not have standing to defensively attack the constitutionality of the statute. In doing so, the rationale for the general rule from Atlantic Coast Line was reaffirmed. In Barr, this Court wrote:
Under the circumstances, we do not feel bound by the dictum in the cited cases relied on by respondents, and reaffirm the rule of State ex rel. Atlantic Coast Line Railroad Co. v. State Board of Equalizers, supra, that is, that the "right to declare an act unconstitutional... cannot be exercised by the officers of the executive department under the *937 guise of the observance of their oath of office to support the Constitution."
And, indeed, the chaos and confusion which would result from the application of such a rule would be immediately apparent. We now have in this state to carry on the state's business almost 100 state agencies, boards and commissions, most of whose members hold office by virtue of executive appointment. The people of this state have the right to expect that each and every such state agency will promptly carry out and put into effect the will of the people as expressed in the legislative acts of their duly elected representatives. The state's business cannot come to a standstill while the validity of any particular statute is contested by the very board or agency charged with the responsibility of administering it and to whom the people must look for such administration.
As indicated above, there is, of course, an exception to this rule  and that is, when the public may be affected in a very important particular, its pocketbook. In such case, the necessity of protecting the public funds is of paramount importance, and the rule denying to ministerial officers the right to question the validity of the Act must give way to a matter of more urgent and vital public interest. But in the absence of such controlling public necessity, we think that the public interest will be best served by channeling all such attacks on the validity of statutes through the duly-elected public officer whose duty it is to protect the public interest in this respect  the Attorney General of this state. State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374 [(Fla.1930)], and cases therein cited.
Barr, 70 So.2d 347 at 350-51.
In Barr, this Court reiterated the holding in Atlantic Coast Line, that "the right to declare an act unconstitutional ... cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution." Barr, 70 So.2d at 351 (quoting Atlantic Coast Line). This Court once again recognized that "[t]he state's business cannot come to a stand-still while the validity of any particular statute is contested by the very board or agency charged with the responsibility of administering it and to whom the people must look for such administration." Barr, 70 So.2d at 351. With that said, Barr also reaffirmed the public funds exception to the Atlantic Coast Line rule. However, in affirming the public funds exception, we stated that "in the absence of such controlling public necessity, we think that the public interest will best be served by channeling all such attacks on the validity of statutes through the duly-elected public officer whose duty it is to protect the public interest in this respect  the Attorney General of this state." Barr, 70 So.2d at 351.
Contrary to the suggestion in the dictum of Fuchs III and Lewis, there is no adequate support for a defensive posture exception to the rule of law from Atlantic Coast Line. In Barr, this Court took a close look at King and Cone and factually distinguished them to explain that neither case receded from the Atlantic Coast Line rule:
It is true, as contended by the respondents, that there is dictum in the cases of City of Pensacola v. King, Fla., 47 So.2d 317, and State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854, which might be construed as an approval of the respondents' theory; but a careful reading of those cases will reveal that, in each such case, there was involved a disbursement of the public funds in the *938 administration of the Act in question  so that these cases could have turned on this one point alone. Nor did this court in either of these cases recede from the rule adopted in the [State ex rel. Atlantic Coast Line Railroad Co. v.] Board of Equalizers case, which we quoted above.
Barr, 70 So.2d at 350. In Barr, this Court expressly rejected the use of the dictum in King and Cone as support for a defensive posture exception. Just as did Robbins, the respondents in Barr sought to challenge the act's constitutionality solely upon their opinion that the legislative enactment was unconstitutional. Just as did Robbins, they did not contend that they were within the two exceptions of the Atlantic Coast Line rule. The Atlantic Coast Line rule, and its two exceptions, as stated in Barr, is:
[A] ministerial officer, charged with the duty of administering a legislative enactment, cannot raise the question of its unconstitutionality without showing that he will be injured in his person, property, or rights by its enforcement, State ex rel. Atlantic Coast Line Railroad Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A.L.R. 362, or that his administration of the Act in question will require the expenditure of public funds, Steele v. Freel, 157 Fla. 223, 25 So.2d 501.
Barr, 70 So.2d at 350 (emphasis added). And, for the very same reasons the court in Barr did not "feel bound by the dictum" in King or Cone that may seem contrary to this rule, I believe we are not bound to and should expressly disavow the dictum in Lewis and Fuchs III. 70 So.2d at 350. There is no defensive posture exception to the Atlantic Coast Line rule.
PARIENTE, C.J., concurs.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
[2] Section 192.042(1), Florida Statutes (1997), provides:

All property shall be assessed according to its just value as follows:
(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. "Substantially completed" shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed.
[3] The trial court in Fuchs declared section 192.042(1), Florida Statutes, unconstitutional. A three judge panel of the Third District reversed the trial court's finding. See Fuchs v. Robbins, 738 So.2d 338 (Fla. 3d DCA 1998). However, on rehearing en banc, the court affirmed the trial court and declared the statute unconstitutional.
[4] The terms "fair market value" and "just valuation" are synonymous in this context. See Walter v. Schuler, 176 So.2d 81, 85-86 (Fla.1965).
[5] Section 193.11 provided:

All taxable lands upon which active construction of improvements is in progress and upon which such improvements are not substantially completed on January 1 of any year shall be assessed for such year, as unimproved lands. Provided, however, the provisions hereof shall not apply in cases of alteration or improvement of existing structures.
§ 193.11(4), Fla. Stat. (1967). Section 193.11 was renumbered in 1969 as section 193.071. See ch. 69-55, § 2, at 241, Laws of Fla. In making these changes, the Legislature indicated that "the substantive impact of every section is completely unchanged." See id. § 4, at 257 (revisor's note). In 1970, the Legislature reorganized and simplified the ad valorem taxation statutes. Section 193.071 was repealed and section 192.042 took its place. See ch. 70-243, § 4, at 713, § 49, at 740, Laws of Florida.
[6] Section 192.042, Florida Statutes (1997), states:

All property shall be assessed according to its just value as follows:
(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. "Substantially completed" shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed.
(2) Tangible personal property, on January 1, except construction work in progress shall have no value placed thereon until substantially completed as defined in s. 192.001(11)(d).
(3) Intangible personal property, according to the rules laid down in chapter 199.
[7] I recognize that only in rare cases should we address prior dictum with dictum; but this is one of those rare cases. The reliance upon the dictum in Fuchs III by ministerial officers such as the respondent to justify a refusal to follow the dictates of duly enacted legislation is a serious matter that must be addressed. We had to address a strikingly similar circumstance over fifty years ago, and we should do so again. As this Court did in Barr v. Watts, 70 So.2d 347 (Fla.1953), when it overruled dictum with dictum, we should not feel bound by the dictum in Fuchs III. Indeed, we must reaffirm the essential rule of State ex rel. Atlantic Coast Line Railway Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922). See Barr, 70 So.2d at 350.
[8] The trial court in Fuchs declared section 192.042(1), Florida Statutes, unconstitutional. A three judge panel of the Third District reversed the trial court's finding. See Fuchs v. Robbins, 738 So.2d 338 (Fla. 3d DCA 1998) (Fuchs I). However, on rehearing en banc, the court affirmed the trial court and declared the statute unconstitutional.